CLEMENT, In re. See Case No. 8,917.

---

# Case No. 2,879.

## The CLEMENT.

[2 Curt. 363.] [1]

Circuit Court, D. Massachusetts. May Term, 1855. [2]

PLEADING AND PROOF IN ADMIRALTY —VARIANCE —COLLISION — BURDEN OF PROOF — LESSENING EFFECT—RULES OF NAVIGATION — EXPERT TESTIMONY.

1. There is no technical rule of variance in the admiralty; and in describing the particular circumstances attending a collision, an omission to state some facts, which prove to be material, which cannot have occasioned any surprise to the opposite party, can have no effect except to raise suspicions in the mind of the judge, as to the existence of those facts.

  [Cited in The Iris, Case No. 7,062; The Quickstep, 9 Wall. (76 U. S.) 670; The Coleman and Foster, Case No. 2,981; Holmes v. Oregon & C. Ry. Co., 5 Fed. 76; The Young America, 31 Fed. 753.]

2. In collision causes, the court will look at all the allegations of both parties, upon which fault depends,—consider which are true, and not allowing either party to contradict, by proof,

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

[2] [Affirming decree of the district court in Case No. 2,880.]

what he has alleged, will extract the true case from the entire record, and decree accordingly.

[Cited in Burton v, Salter, Case No. 2,218; The Cambridge, Id. 2,334; The Coleman, Id. 2,981; The Clytie, Id. 2,913; The Maryland, 19 Fed. 557.]

3. If two vessels are approaching each other on converging courses, one having the wind two points free, and the other closehauled, and a collision occurs, the burden is on the former to show that all possible care and skill were used on her part, and that the collision was the fault of the other vessel, or was inevitable. It is not enough that, at the moment of the collision, the one having the wind free, used all possible efforts to avoid or lessen the effects of a collision; previous precaution and foresight are required.

[Criticised in Whitridge v. Dill, 23 How. (64 U. S.) 455. Cited in The Maria & Elizabeth, 7 Fed. 254; The Commodore Jones, 25 Fed. 508.]

4. A very clear case for a departure from a rule of navigation must be made out, before a vessel can be pronounced in fault for adhering to it.

[Cited in Baker v. The City of New York. Case No. 765; The Sunnyside, Id. 13,620; McCoy v. The Currituck, Id. 8,730; The Golden Grove, 13 Fed. 688; The Britannia, 34 Fed. 553: Meyers Excursion & Nav. Co. v. The Emma Kate Ross, 41 Fed. 828.]

5. The rule which requires a vessel having the wind free to keep clear of one sailing close to the wind, applies between pilot boats and other vessels. and in bays and harbors as well as on the high seas.

6. Experts must give their opinion on an ascertained or supposed state of facts, not upon reading depositions. Their testimony is not admissible to prove that a rule of navigation, recognized by the general maritime law, does not exist in a particular locality.

[Appeal from the district court of the United States for the district of Massachusetts.

[In admiralty. Libel by Matthew Hunt and others. owners of the pilot boat Hornet, against the brig Clement, for damages caused by collision. There was a decree for libellants in the district court (Case No. 2,880), and the claimant Paul Mayo appeals.]

F. C. Loring, for appellant.

C. P. Curtis, Jr., contra.

CURTIS, Circuit Justice. This is an appeal from a decree of the district court pronouncing for damages in a cause of collision. The libel alleges that, about one o'clock, p. m., of the tenth day of June, 1854, the pilot boat Hornet, of the burden of fifty-three tons, and the brig Clement, were both sailing towards the "Graves," which are ledges of rocks lying outside of the harbor of Boston; that the wind was fresh from the north-west by west, the sea smooth, both vessels on the starboard tack, and the pilot boat close to the wind, and to the leeward of the brig; when the brig suddenly changed her course, and kept off and struck the pilot boat, which sunk and was totally lost. The answer avers, that at the time in question, the Hornet was to leeward of the Clement, and sailing faster and nearer to the wind, and in such a direction as must

bring her across the course of the brig; that no particular attention was paid to the Hornet, by the Clement's people, until it was perceived that the Hornet was so near the Clement, as to make the danger of collision imminent, by attempting to run across the bows of the Clement; when the Hornet was hailed, and told to keep off, which might easily have been done; and though the hail was heard on board the Hornet, her course was not changed, and a collision being then apparently inevitable, the helm of the brig was put down, and the brig so far luffed into the wind that only her jib-boom caught in the rigging of the Hornet and tipped her over. The answer denies that the Clement kept off and struck the Hornet, as is averred in the libel, and says she kept her course until she luffed to lessen the force of the collision. The district judge was of opinion, that the evidence did not support the allegation in the libel, that the Clement kept off and struck the Hornet, but that it appeared from the allegations of the libel and answer, that the case was one of two vessels sailing in converging courses on the same tack, the Hornet being closehauled, and the Clement having the wind two points free; that the rule of navigation required the Hornet to keep her course, and the Clement to keep out of the way; that there were no special circumstances in this case to render this rule inapplicable, or to shift the fault, or any part of it, from the Clement to the Hornet; and consequently that the former must bear the whole loss.

The main ground upon which the appellant has sought to reverse the decree is, that it was rested upon facts not alleged in the libel. And he relies upon the rule that a decree in the admiralty must be secundum allegata as well as probata. This is a well settled and important rule. But it does not follow that a decree awarding damages to the libellant can be rested only on his allegations. On the contrary, there is an entire class of collision cases, in which the decree is in conformity with the separate allegations of neither of the parties. I refer to cases of mutual fault. In such a case the libel states fault on the part of the vessel proceeded against, and the exercise of due care and skill in the management of the libellant's vessel; the claimant denies the fault imputed to him, and alleges fault on the part of the libellant's vessel; the court finds part of the allegations in each pleading to be true. and the residue untrue; that the real case is substantially different from the one shown by the allegations of either of the parties; and upon that real case makes a decree apportioning the damages between them. And so I apprehend that in all collision cases, the court will look at the allegations of both the parties of all matters of fact, upon which fault, or its absence, depends; they will consider which of those allegations is proved, not allowing

either party to contradict by proof, what he has alleged; and having thus extracted the real case from the whole record, will pronounce for the one party or the other, as that case requires. I do not intend to say that a libellant may plead one fault on the part of the vessel proceeded against, and offer evidence of another. On the contrary, I think his proofs must, generally, be restricted to his allegation, to prevent surprise of the respondent. But when he has been thus restricted, if the facts alleged and proved by him, taken in connection with other facts admitted upon the record by the claimant, entitle the libellant to recover damages, and the claimant has not succeeded, by his allegations and proofs, in repelling that claim, in my opinion a decree should be made for the libellant. It must be remembered that the variance occurs, not in describing the substantive cause of action, which is a collision occasioned by neglect; nor in proving the contrary of any allegation; but in detailing the particular circumstances, which accompanied or constituted the neglect, the party has omitted to allege some fact which his adversary supplies by his allegation on the record. The rules of common law pleading are fully satisfied by a general allegation of negligence. The admiralty requires that each party should state all the essential particulars which go to make up the fault alleged. The Virgil, 2 W. Rob. Adm. 204. Their absence may injuriously restrict the evidence of the party, by whose fault they are omitted, or give rise to suspicions of the fairness of his statement. And yet it may happen, as Dr. Lushington declares it did in the case of The Lady Anne, 1 Eng. Law & Eq. 674, that the very point on which a case of collision hinged, had never been touched upon at all in the pleadings. In that case he remarked, "it is certainly desirable, in all these cases, that the pleadings should state the facts with precision, and should also state with accuracy the grounds upon which both parties rely. But I think we must be also well aware, that in matters of this description, it will be quite vain to expect perfect accuracy as to facts or pleadings, and for a very obvious reason." I agree with Mr. Justice Washington (Crawford v. The Wm. Penn [Case No. 3.373]) that there is no doctrine of merely technical variance in the admiralty; and that aside from the influence produced upon the mind of the judge by the fact that a party has not stated his case accurately, no effect is allowed to a variance, which cannot have surprised or injured the opposite party. And when the court takes the facts to be, as a party has distinctly averred them on the record, it is plain that party cannot be surprised or injured by a different statement by his opponent.

In the case before me, the libel alleges a collision through the fault of the brig. The facts that the vessels were sailing on the same tack, the Hornet being to leeward, and so closehauled that she could not luff any nearer the wind, are stated in the libel. It is not stated, in terms, that the brig also was not closehauled; but the answer alleges that the brig had the wind two points free, that the two vessels were sailing on converging courses, and neither changed its course until a collision was inevitable. This makes a case of fault on the part of the brig, unless it is repelled by other facts; and the burden is on the claimant to prove those facts. The Baron Holberg, 3 Hagg. Adm. 245. The claimant's counsel insists that this burden has been sustained, and that the libellant should not recover: because the steersman of the Hornet did not do all he was bound to do, to avoid a collision, after the danger had become apparent. If this were so, it might make a case of mutual fault. The Commerce, 3 W. Rob. Adm. 288. But I am not satisfied that he omitted any thing which he ought to have done. Upon the rule of navigation applicable to such cases, he was not only in the right, in acting upon the assumption that the brig would be so steered, as to keep out of his way, but he was bound to act on that assumption and keep his course, unless he saw that there would be no probable chance of a collision, if he disregarded the rule. Undoubtedly a rule is not to be followed, if it is apparent, a collision must ensue from an observance of it, and will be avoided by disregarding it. But considering the great importance of a steady observance of the rules of navigation, and the danger of allowing departures therefrom, I shall be found slow to condemn an observance of one of these rules, and shall require a clear case, demanding a departure from it, to be proved, before I declare it to have been a fault to observe the rule. The Hope, 1 W. Rob. Adm. 155. In my opinion such a case is not made out by this claimant.

The claimant insists that the rule is not applicable except upon the high seas, and never between pilot boats and other vessels. I think otherwise, on both points. The rule is as applicable in bays and roadsteads, and for obvious reasons is of more frequent application, and more practical importance there, than in the open sea. The Speed, 2 W. Rob. Adm. 225; The Eastern State [Case No. 17,494]. And I know of no safe ground, upon which I could hold, that pilot boats are neither to be subjected to, or have the benefit of these settled rules of navigation, which no class of vessels can be released from, consistently with the general safety.

It is further insisted, that at the time in question, the brig was so near the "Graves," she could not luff sufficiently to clear the Hornet, and keep clear of the "Graves," nor bear away without running the Hornet down. This may be true; but those in command of the brig should have foreseen these difficulties, before the brig was in a position,

where she could not keep out of the way of the schooner, which she was bound to do. Why the brig was in such a position, is explained by what is admitted in the answer, "that no particular attention was paid to the schooner, until it was perceived she was very near the brig;" this was a fault on the part of a vessel having the wind free, the other being closehauled. Probably the brig could have done, before the collision, what she did immediately afterwards; wear round and stand on her course for Light House channel. Whether she could or not, this was a case where the collision occurred in a summer's day, in a six to eight knot breeze, under no circumstances which a navigator ought not to have perceived or foreseen; and I cannot hesitate to pronounce that vessel in fault which, having the wind free, came into collision with the other closehauled, and exhibits no sufficient excuse for having done so.

A question was made at the hearing, concerning the admissibility of the testimony of experts, in answer to questions proposed to them. not on a given state of facts, but upon the depositions of the witnesses who were present at the collision. I am of opinion such evidence is not admissible. Fenwick v. Bell, 1 Car. & K. 312. would, perhaps, justify such a question; but Sills v. Brown, 9 Car. & P. 601, is the other way; and in The Ann and Mary, 2 W. Rob. Adm. 195, the necessary qualification was made, that a clear statement of facts must be laid before the experts. If this be not done, the court cannot know, whether the opinion pronounced by the expert, is upon the case found by the court, or upon some essentially different case. See U. S. v. McGlue [Case No. 15,-679]; Rex v. Searle, 1 Moody & R. 75; Rex v. Wright, Russ. & R. 456; Com. v. Rogers, 7 Metc. [Mass.] 500.

Evidence of two experts was also offered, concerning rules of navigation, where two vessels were sailing on converging courses, the one being closehauled, and the other two points free. The rule of the maritime law upon this subject is so well settled, that I cannot regard opinions of individuals in opposition to, or qualification of it. And though it is undoubtedly true, that special circumstances may exist, upon which the opinions of nautical men may be taken, without controverting the rule, but only for the purpose of ascertaining whether the particular case is within it, yet the court has not found, in this case, any such special circumstances as render the opinions of the experts applicable.

Nor do I think their evidence is sufficient to prove a local usage, binding in point of law, that no attention is required to be paid by other vessels to pilot boats; the latter being bound to take care of themselves. Local usages, on this subject. if capable of being established at all, by any evidence, which I greatly doubt, should be admitted only with the utmost caution. To hold that sailing vessels of a particular class are to take care of themselves, under all circumstances, or under circumstances in which other sailing vessels do not do so, involves the necessity of manoeuvres on their part, which if not foreseen. must produce collisions; and while the usage is local, or forms an exception to the common rules of the sea, how can it be expected to be so known as to be generally foreseen? In my opinion, it would be extremely unsafe to declare. that pilot boats were exempt from the rules which govern other sailing vessels; and I must so declare, if I were to hold them not entitled to the protection of those rules.

The decree of the district court is affirmed, with damages at the rate of six per cent. per annum, and costs.

[NOTE. An appeal was taken to the supreme court, but the judges of that court were equally divided in opinion. See note to case No. 2,880.]